## Conner's Estate.

Argued December 3, 1942. Before SCHAFFER, C. J.;
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Walter Lee Sheppard,* of *Foulkrod, Sheppard, Porter
& Alexander,* and *Rawle & Henderson,* for appellant.

*S. Lloyd Moore*, with him *Charles B. Downs, Milton C. Sharp, Benjamin B. Hoar, Edward P. Loughran, Moore, Gossling & Panfil* and *Isidor Ostroff*, for appellees.

OPINION BY MR. JUSTICE PARKER, January 5, 1943:

This appeal involves an interpretation of the will of Annie J. Conner for the purpose of determining who is entitled to take the principal of decedent's personal estate after the death of her three children.

Mrs. Conner died April 5, 1910, leaving to survive her three children, Norman, Annie L. and Alice W. Conner. All three children have now died unmarried and without issue and the principal of the personal estate is for distribution. It was claimed by the collateral heirs of the children, representing them as their estates have been fully settled, and by certain charities and strangers to the blood of decedent named in her will.

The pertinent portions of the will are as follows: *"First,* I give and bequeath all I may die Possessed of, to my three Children, Norman Conner, Annie Lousia Conner and Alice Williams Conner. The Homestead 7056 Germantown ave Mt. Airy, I give to My Son, Norman Conner, With all it contains except what may be Personal Property of my Two Daughters, Annie L. and Alice W. the Balance to be kept as an estate and after all repairs and expenses are paid the income to be equally devided between the three, hoping they will live together and *love* each other until Marriage or Death parts them . . . and in Case of Death of one, his or her share going to the other two. I appoint my two Daughters, Annie L. and Alice W. My Executors . . . I appoint my Two Daughters, Guardians of thier Brother Norman Conner . . . If any one of my Children should leave leagal Issue, I Direct and Devise that such Issue should have the estate equally devided between them after paying to my husbands Dearest friend Arthur Williams or hiers ($5000.00) five thousand Dollars [fol-

lowed by other cash bequests aggregating $39,000, including $5,000 to appellant] . . . I give my Executors, Power to buy and sell as they see fit, to Improve the Estate for their mutual Benefit."

On behalf of the collateral heirs it was claimed either that Annie J. Conner died intestate as to the principal or that the three children of decedent took a defeasible fee now discharged of conditions. The result would be the same, for the collateral heirs now entitled to take would be the same persons. The appellant, one of the pecuniary legatees mentioned in the will, claims that by the terms of the will it became entitled to participate in the fund on the death of the children.

The majority of the orphans' court held that the three children took a defeasible fee liable to be reduced by the existence of issue of any of the children surviving them, that the condition did not occur, and that the charge of $39,000 on the conditional gift fell with the conditional gift to the issue. We are in accord with this construction.

While this is a layman's will in the handwriting of testatrix, and it is proper to explore the four corners of the will in the light of the circumstances under which it was written to discover her testamentary intent, we must keep in mind that it is not the province of the court "to consider what the testator possibly intended, but only what intention is expressed in the language used": *Joyce's Est.*, 273 Pa. 404, 407, 117 A. 90; *Biles v. Biles*, 281 Pa. 565, 568, 127 A. 235.

The only reference in the will to the pecuniary legatees, including appellant, is the clause which reads: "If any of my Children should leave leagal issue, I Direct and Devise that such Issue should have the estate equally devided between them after paying" bequests aggregating $39,000. The bequests were not only conditioned on the children leaving issue, but their payment was charged against the estate devised to the issue. We find nothing in the will from which we can infer an intent to bequeath anything to these claimants under any other

circumstance than that the children should leave issue. We are limited to what the testatrix said and may not speculate as to what we think she thought when we cannot gather her intent from the will. There is no ambiguity or contradiction in this respect and we could only rely on conjecture in arriving at any other conclusion.

Appellant suggests that it is only necessary to transpose the clause bequeathing the pecuniary legacies and place it before the word "if" to sustain its contention. That would be making, not interpreting, a will. It was said in *Griffith's Lessee v. Woodward*, 1 Yeates 316, 319: "Courts of justice will transpose the clauses of a will, . . . only in such cases when it is absolutely necessary so to do, to support the evident meaning of the testator." Here, without the transposition, the suggested intent cannot be inferred and therefore cannot be considered: *Merkel et al. Admns.*, 109 Pa. 235; *Worst v. De Haven*, 262 Pa. 39, 41, 104 A. 802; *Biles v. Biles*, supra, p. 571; 2 Page on Wills §937. A transposition of words may be used to clarify the intent of the testator but not to determine the intent when such intent cannot otherwise be found: *Whitman's Est.*, 329 Pa. 377, 381, 198 A. 161.

It is a general principle that where there is an absolute gift followed by other provisions touching its enjoyment, or further limitations, which purposes do not exhaust the beneficial interest and there is a failure of such purposes then the absolute gift remains: *Redding v. Rice*, 171 Pa. 301, 33 A. 330; *Scott v. Murray*, 218 Pa. 186, 67 A. 47. It is upon that principle that the court below relied. Our primary inquiry is whether the original gift standing by itself carries an absolute estate. There would seem to be no doubt as to this. The introductory clause reads: "I give and bequeath all I may die Possessed of to my three Children." True, she then makes an absolute devise of No. 7056 Germantown Avenue to Norman: *Conner's Est.*, 302 Pa. 534, 153 A. 730. We there said in substance that the devise to Norman

and accompanying directions were but further provisions as to how the entire estate should be divided. She finally added that "in Case of Death of one, his or her share going to the other two". The provisions for keeping the estate together only regulated the beneficial enjoyment and that to a very limited extent (cf. Opinion by Judge GEST, *Carpenter's Est.*, 8 D. & C. 512). Her children were the natural objects of her bounty and we have the case of a widow giving her estate to her children to whom it would have gone under the intestate laws except that she made special provision for a home for her son who was an incompetent.

It is equally clear that the gift to the issue was conditional, that the condition failed and that the condition did not exhaust the beneficial interest. The gift to surviving issue was undoubtedly conditional and the pecuniary gift to appellant and others was charged on that gift. It makes no difference that the contingency could not be determined until the death of all three children: *McCall v. Umbenhauer*, 270 Pa. 351, 113 A. 423; *Redding v. Rice*, supra. The gift to the appellant fell with the gift to the surviving issue: *Whitman's Est.*, supra. In fact, the *Whitman* case is controlling here and answers many of appellant's arguments. There it was provided that if a son should "marry and die leaving wife, and lawful issue" the income and under certain conditions the principal from which the son had been receiving the income should go to the wife absolutely if living. The son married but died without issue. We held that the leaving of issue was a condition precedent to the vesting of the principal in the wife and declined to transpose the words to find a different intent.

The decree of the court below is affirmed, costs to be paid by the Trustees of the Estate out of the funds in their hands.