## Zimmerman Estate

*Frank S. Moser*, for petitioner.

TROUTMAN, J., October 19, 1962.—This is a proceeding for a declaratory judgment under the provisions of the Act of June 18, 1923, P. L. 840, its supplements and amendments thereto, 12 PS §831 et seq. The petition was filed by Roy Zimmerman, Ruth Neighbour, Mary Derk and Michael Nadley, all of whom are executors of the estate of Homer Alvin Zimmerman, deceased.

This controversy involves the interpretation of the first paragraph of the will of decedent in which he provides:

"1. I give, devise and bequeath my real property to my daughter, Mary Derk, her heirs and assigns forever."

The petition is filed by all of the parties in interest and raises no factual issues but questions of law only. The court accepts jurisdiction for the reason that the case presents antagonistic claims by the parties involved, all of whom are sui juris and before the court. In addition, the executors are evenly divided on the interpretation which should be given this clause of decedent's will, and the controversy indicates imminent and inevitable litigation and the declaration sought will be a help in ending the uncertainty.

The facts are not in dispute and are as follows:

Homer Alvin Zimmerman died testate December 3, 1961, a resident of the City of Shamokin, in this county. Letters testamentary were issued December 11, 1961, to his three children, Roy Zimmerman, Ruth Neighbour, Mary Derk, and to Michael Nadley, the executors named in the will.

Testator became the owner of lot 5, block 52, Shamokin, Northumberland County, Pennsylvania, by deed dated March 6, 1909, and was the owner of said real estate on August 28, 1959, and on December 3, 1961. This was the only real property owned by testator when he executed his will on August 28, 1959, and on December 3, 1961, the date of his death.

On and prior to September 16, 1961, a two and one-half story frame building occupied by Zimmerman Jewelers, Inc., as a jewelry store on the first floor and by testator as an apartment on the second floor, municipally numbered 34-6 North Market Street, Shamokin, Pennsylvania, was located on the eastern portion of lot 5, block 52, and a frame garage facing on Coal Street, Shamokin, Pennsylvania, was situate on the western part thereof.

Prior to September 16, 1961, testator caused policies to be issued insuring the premises at 34-6 North Market Street, Shamokin, Pennsylvania, against loss resulting from fire in the amount of $20,000. These

policies contained a mortgagee clause in favor of the National-Dime Bank of Shamokin, Pennsylvania, testator having executed a mortgage in favor of the said bank to secure a loan, the balance due on the said mortgage being $6,356.57.

On September 16, 1961, the two and one-half story frame building at 34-36 North Market Street, Shamokin, Pennsylvania, was almost totally destroyed by fire and the premises have remained in the fire-damaged condition on December 3, 1961, and to the present time. Testator received multiple burns in the fire causing him to be a patient in the Shamokin General Hospital from September 16, 1961, until his death on December 3, 1961.

On November 29, 1961, testator executed a proof of loss claim under one of the fire insurance policies in the sum of $15,000 and on December 11, 1961, the executors under the will of the decedent executed a proof of loss claim under the remaining fire insurance policy. In January, 1962, the estate received the proceeds of the fire insurance policies on the real estate, being the sum of $20,000, less the balance due on the mortgage in the amount of $6,356.57, or $13,643.43.

The executors under the will are evenly divided on the effect of paragraph one of the will which gives, devises and bequeaths to his daughter, Mary Derk, her heirs and assigns forever the real property. Two of the executors, Mary Derk and Michael Nadley, contend that, by reason of this provision, Mary Derk is to receive the land and buildings in the condition existing since the fire on September 16, 1961, together with the fire insurance proceeds of $20,000 in full, the balance due on the mortgage to be paid by the recipient of the fire insurance proceeds. The other two executors, Roy Zimmerman and Ruth Neighbour, contend that, by reason of the said provision, Mary Derk is to receive the land and buildings in the condition existing since

the fire on September 16, 1961, the estate is to receive the fire insurance in the sum of $20,000 in full and the balance due on the mortgage on the real estate is to be paid by Mary Derk.

Decedent's will, dated August 28, 1959, contains four items. The first item gives, devises and bequeaths his real property to his daughter, Mary Derk. The second item gives and bequeaths money due him from Zimmerman's Jewelers, Inc., which is represented by notes payable to him as follows: 25 percent thereof to his son, Roy Zimmerman, and his daughter, Ruth Neighbour, and 75 percent thereof to his daughter, Mary Derk. The third item bequeaths his stock in Zimmerman Jewelers, Inc., to his daughter, Mary Derk. The fourth item appoints his three children and his accountant, Michael Nadley, the executors of his estate. The will contains no residuary clause and evidently disposes of his entire estate as it existed at that time.

At the time of his death on December 3, 1961, his estate consisted of the same assets except that his real property had been substantially destroyed by fire which had occurred on September 16, 1961, approximately two and one-half months prior to his death, and the fire insurance claims.

Under section 14(1) of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.14, it is provided that: "In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules: (1) Wills construed as if executed immediately before death. Every will shall be construed, with reference to the testator's real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator."

Immediately before the death of testator, his real property consisted of a lot and a substantially destroyed building. The building having been destroyed by fire

prior to the death of testator, the policies immediately became due and any right of action on the said policies belonged to Homer Alvin Zimmerman. This right accrued at the inception of the fire. He did execute a proof of loss on one of the large policies but, due to his subsequent death, the proof of loss on the other policy was executed by his executors.

Unquestionably, the proceeds of these fire insurance policies were personal property and were properly paid to the executors, less the amount of the mortgagee's interest therein. A fire insurance policy is a personal contract which does not insure the property covered by the policy, but which provides indemnity for the insured and for his interest in the property: Gorman's Estate, 321 Pa. 292, 295, 297. An important feature of such indemnity is the personal equation that exists between insurer and insured. The building itself is not insured; the indemnity is provided for the insured and for his interest in the property: Spires v. Hanover Fire Insurance Company, 364 Pa. 52, 56.

We conclude that at the time of the death of testator, the proceeds of the fire insurance policies were personal property and, as provided under the provision of section 14(1) of the Wills Act, supra, the will must be construed as if executed immediately before death and would not pass as part of his real property unless a contrary intent appears in his will. It has been repeatedly held that the intent of a testator is the pole star in the construction of a will and must be ascertained by a consideration of the entire will: Newlin Estate, 367 Pa. 527. In construing a will, it is not what a testator may have meant, or what a beneficiary thought the testator may have meant, but it is the meaning of testator's words which alone control: Burpee Estate, 367 Pa. 329.

The will in this case was executed by testator several years before his death. It is a matter of judicial knowl-

edge that the first floor of his real estate was then occupied by Zimmerman Jewelers, Inc. His will made no mention of any debts which may have been owed by testator nor was there any residuary clause. Consequently, we are warranted in concluding that testator intended to give and devise all of his property as it then existed. Subsequently, on March 22, 1961, testator executed a mortgage in favor of the National-Dime Bank of Shamokin to secure a loan of $6,750 on the premises at 34-6 North Market Street, Shamokin, Pennsylvania, which was the only real estate owned by testator. This mortgage was in existence at the time of the fire on September 16, 1961.

Had testator died before the fire or simultaneously with the fire, we would have no hesitancy in holding that the proceeds of the fire insurance would be payable to the devisee of the real property. This would be particularly so inasmuch as testator's will contained no residuary clause. The law does not favor intestacy, and a presumption exists that the testator who makes a will did not intend to die intestate: Kautz v. Kautz, 365 Pa. 450.

However, under the facts in the instant case, testator survived the fire by a period of over two and one-half months and during that period did not see fit to change his will. There is nothing in the record which indicates any mental incapacity which would have prevented him from doing so. As a matter of fact, the presumption is that he was mentally capable of executing a will in the absence of evidence to the contrary. His mental capacity is further evidenced by the fact that he executed a proof of loss on November 29, 1961. All of the circumstances indicate that testator fully expected to receive the proceeds of the fire insurance policies as cash. Furthermore, there is nothing in the petition which indicates that the insurance companies had any intention to exercise their option to restore the premises

rather than pay the loss in cash. On the contrary, the circumstances indicate that the loss was so great that they had no intention of exercising such an option.

To award the proceeds of this insurance to the devisee, Mary Derk, would violate the language used by testator in his will and, even though we may feel that testator meant to give his daughter a useable property, unimpaired by fire, to do so would be to read something into his will which is not present.

No appellate cases have been found after diligent search by counsel and the court in which the factual situation of this case was presented. However, a similar situation arose in Riling's Estate, 50 Pitts. L. J. 77 (1902), where the court held:

"Where it appears that decedent died from injuries received from a fire which evidently started in her bed and which destroyed the house, the insurance money upon the house is an asset of the estate and should not be paid to her devisee as the insurance company became liable for the loss at the inception of the fire and hence the cause of action arose in the lifetime of the decedent." (Syllabus)

The devisee, Mary Derk, relies upon the decision in Nichols' Appeal, 128 Pa. 428, in support of her claim to the insurance proceeds. The facts in this case are entirely different from the facts presented in the instant case. In that case, decedent in his lifetime held a policy of fire insurance upon real estate which was destroyed by fire after his death but while the policy was in force. Decedent had died intestate, and the court held that the insurance payable thereon is an asset of the estate with which the administrator is chargeable, and the right of the heirs thereto is subordinate to that of the creditors. In the instant case, the policies became payable upon the inception of the fire which was before the death of testator.

Under the circumstances, the provisions of section 14(1) of the Wills Act, supra, are applicable, and we hold that the will of testator in this case, with reference to his real and personal estate, speaks and takes effect as if his will had been executed immediately before the death of testator. The proceeds of the fire insurance policies, being personal assets of this estate with which the executors are chargeable, must be distributed under the provisions of the intestate law.

It is the contention of two of the executors, Roy Zimmerman and Ruth Neighbour, that Mary Derk receives as devisee, testator's real property subject to a mortgage in favor of the National-Dime Bank and, consequently, is obligated to pay the balance due on the said mortgage in the sum of $6,356.57. Their claim is based on section 180.14(12), entitled "Rules of Interpretation" as provided in the Wills Act of 1947, supra, which section reads as follows:

"(12) Real estate subject to mortgage. The devisee of real estate which is subject to a mortgage shall take subject thereto, and shall not be entitled to exoneration out of the other estate of the testator, real or personal; and this whether the mortgage was created by the testator or by a previous owner or owners, and notwithstanding any general direction by the testator that his debts be paid."

At the time of the destruction of the real estate in this case, the policies of fire insurance contained a standard mortgagee clause in favor of the National-Dime Bank, the mortgagee. In making settlement, the insurance companies paid the mortgagee the sum of $6,356.57, and the balance of the settlement or $13,643.43 was paid to the estate of Homer Alvin Zimmerman, deceased.

We conclude that Mary Derk, the devisee, is not liable for the payment of the mortgage in this case for the reason that the same was paid or the funds were

available for the payment of the said mortgage at the time of the death of testator. When the loss occurred, the insurance companies not only became liable to the insured for the amount of his loss but also became liable for the balance due on the mortgage as covered by the mortgagee clause in their policies. At the time of Mr. Zimmerman's death, provision for the payment of the mortgage against this real estate was already made and the fact that the money was not actually paid until after his death did not affect this provision for payment. A standard mortgagee clause in a fire insurance policy creates a separate, distinct and independent contract of insurance in favor of a mortgagee. A mortgagee clause in a fire insurance policy is an agreement between the insurer and the mortgagee as to the disposition of the policy proceeds, its purpose is purely to protect the mortgagee's interest. Upon loss the holder of the mortgage by such clause has a superior right to the policy proceeds: Guarantee Trust and Safe Deposit Company v. Home Mutual Life Insurance Company, 180 Pa. Superior Ct. 1, 5.

Consequently, since provision for the payment of the mortgage was made prior to the death of testator, the devisee, Mary Derk, takes the real estate unencumbered by the mortgage.

Accordingly, the court enters the following:

### Decree

And now, to wit, October 19, 1962, a petition for a declaratory judgment having been presented to the court in the above matter, and the court having assumed jurisdiction, and after full and careful consideration, it is hereby adjudged and decreed that Mary Derk is entitled to receive the real property of testator, Homer Alvin Zimmerman, deceased, being lot 5, block 52, City of Shamokin, Northumberland County, Pennsylvania, together with the building or buildings erected thereon free and clear of the mortgage executed

by Homer Alvin Zimmerman on March 22, 1961, in favor of the National-Dime Bank of Shamokin, Pennsylvania, and that the balance of the fire insurance proceeds in the sum of $13,643.43 is personal property and is an asset of the estate with which the executors are chargeable, and shall be accounted for by them and any balance thereof distributed under the intestate laws of the Commonwealth of Pennsylvania.

It is further ordered that the costs of this proceeding shall be paid out of the assets of the estate.

Appropriate exceptions are noted for the parties in interest.