In re: Estate of John J. Canfield.

Argued March 6, 1933. Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*A. G. Rutherford,* and with him *D. R. Reese* and *Ira B. Rutherford,* for appellant.

*Lester R. Male,* and with him *Homer Greene,* for appellees.

OPINION BY JAMES, J., July 14, 1933:

John J. Canfield, a resident of Damascus Township, Wayne County, Pennsylvania, died November 19, 1929 testate, leaving to survive him two sons, George A. Canfield and Clarence E. Canfield, both of said township, and two daughters, Lillian M. Tegeler and Alma F. Loy; decedent's wife having preceded him in death. His will, undated, was executed on April 26, 1929, probated November 30, 1929, and Letters Testamentary were granted to Clarence E. Canfield and Lillian M. Tegeler, executors named therein, who accepted the duties of the trust.

After directing that his just debts and funeral expenses be paid and that the sum of $100 be set aside for the payment of the upkeep and care of his cemetery lot, the will provided as follows:

"3. I give and bequeath to my son, George A. Canfield, six thousand dollars ($6,000) exempt from any expenses, also my share of Big Eddy Telephone stock, my Government bonds, a piece of land extending north of Isaac L. Canfield's driveway six rods wide from road to Isaac L. Canfield's line. The privilege of cutting wood and gathering what apples he wants from Frank McCollum lot, also privilege of keeping horse in old barn, and the shed on north end of barn for storage, free of charge.

"4. I give and bequeath to my son Clarence E. Canfield, the engine and threshing-machine, feed mill, also my share of land known as Frank McCollum lot, and pay the estate three hundred dollars ($300). Also the Old Homestead with the exception of the piece of land described above to be left to my son George A. Canfield, after all directions are carried out.

"5. I give and bequeath to my daughters, Lillian

M. Tegeler and Alma F. Loy, all money that is left and securities which is to be equally divided between them after expenses are paid.

"6. Providing my money and securities fall short of Ten Thousand one-third of what it falls short will be held against the Old Homestead, this amount being my daughters' share, namely Lillian M. Tegeler, and Alma F. Loy."

The personal estate of the decedent was appraised at $16,473.90 and the net balance for distribution, after the allowance for the payment of debts, funeral expenses and costs of administration, showed a balance of $14,452.30, of which the following partial distribution was made:

George A. Canfield

| | |
|---|---|
| Cash from Honesdale National Bank .... | $1,170.90 |
| Cash from Honesdale National Bank .... | 2,411.95 |
| Cash from Honesdale Dime Bank ....... | 392.15 |
| Cash from Farmers & Merchants ........ | 2,000.00 |
| G. L. F. Feed stock ................... | 25.00 |
| | $6,000.00 |
| Government Bonds ..................... | 4,300.00 |
| Big Eddy Tel. stock ................... | 35.00 |
| | $10,335.00 |

| | | |
|---|---|---|
| Lillian M. Tegeler ............. | $1,000.00 | |
| Alma F. Loy .................. | 1,000.00 | |
| Both—F. & M. stock ............ | 180.00 | |
| Church ..................... | 100.00 | |

Balance in hands of Executors .. $2,117.30

On August 10, 1931, upon petition of Lillian M. Tegeler and Alma F. Loy, the court granted a rule upon Clarence E. Canfield and Lillian M. Tegeler, executors, Clarence E. Canfield, devisee, and George E. Canfield, as transferee, to show cause why they

or either of them should not pay to the said petitioners the sum of $1,900.70, which amount is arrived at as follows: The sum of $2,180 paid to said legatees, and a balance of $2,117.30 as shown to be in the hands of the executors, or a total of $4,297.30, which is $5,702.70 less than the $10,000 provided for in clause six of said will, and of which deficit, one-third was to be held against the "Old Homestead." An answer was filed to this petition and rule, hearing held, and the final entry of the order making the rule absolute that said sum of $1,900.70 with interest thereon from November 19, 1930, should be paid to Lillian M. Tegeler and Alma F. Loy and the said sum to remain a charge on the real estate known as the "Old Homestead" until paid, from which order Clarence E. Canfield has appealed to this court. (Our calculations show the amount to be $1,900.90, instead of $1,900.70.)

We have given careful consideration to the able argument of appellant's counsel and the authorities cited in appellant's brief but are nevertheless persuaded that the interpretation of the will by the court below was entirely correct. In the construction of wills each individual case must stand on its own bottom and must be governed by the facts surrounding it and by the intention of the testator as drawn from the four corners of the will itself. "Precedents are of little value in the construction of wills, because when used under different circumstances with different context, the same words may express different intentions." Fidelity Trust Co. v. Bobloski, 228 Pa. 52, 57.

The language of the court in Bender v. Bender, 226 Pa. 607, states at length the rule which we believe applicable to the present case, and reads as follows: "In construing a will, the rule requires that it be read in the ordinary and grammatical sense of the words employed unless some obvious absurdity or some repug-

nance or inconsistency of the declared intention of the testator, as extracted from the whole will, should follow from so reading it. Where this occurs a construction may be adopted avoiding these consequences.'' But in the case at bar, there is no occasion to invoke the aid of artificial rules of construction in the interpretation of the testator's will. There is no ambiguity or uncertainty in the language used by him in disposing of his estate. Hence, his intention must be ascertained from the words employed in the will, and neither surmises as to such intention nor the application of rules of construction can be permitted to defeat it. While it is true that in construing any part of a will the entire instrument must be considered, yet this rule, like all rules of interpretation, is only available when a necessity for its application arises. There can be no such necessity when the testator uses language that is plain and certain in its meaning, and there is no conflict in the different provisions of the will. A general scheme of distribution can not be attributed to the testator which will defeat the intention to dispose of the estate clearly disclosed by the plain and express language of the will: Thompson's Estate, 229 Pa. 542, 546.

In the case at bar, the testator first provided for the payment of his just debts, which was followed by a provision setting aside the sum of $100 for the upkeep and care of his cemetery lot. In the third paragraph, the testator provided as follows: ''3. I give and bequeath to my son, George A. Canfield, six thousand dollars ($6,000) exempt from any expenses, also my share of Big Eddy Telephone stock, my Government bonds, a piece of land extending north of Isaac L. Canfield's driveway six rods wide from road to Isaac L. Canfield's line. The privilege of cutting wood and gathering what apples he wants from Frank McCollum lot, also privilege of keeping horse in old barn,

and the shed on north end of barn for storage, free of charge.'' Clearly, from the language used in this paragraph, it was the thought and intent of the testator that his son George A. Canfield should receive the several bequests mentioned without reference to any other bequests that may have been made to others who were to be the recipients of his bounty. These items alone amounted to $10,335.

In the fourth paragraph of his will, the testator bequeathed to his son Clarence E. Canfield, certain machinery, his share of land known as the Frank Mc-Collum lot, and also provided as follows: ''Also the Old Homestead with the exception of the piece of land described above to be left to my son George A. Canfield, after all directions are carried out.'' From the plain reading of this paragraph, it appears that the devise of the ''Old Homestead'' was to be subject to certain other conditions, or the words ''after all directions are carried out'' would have no meaning or effect. Surely, these words must be taken in relation to the provisions of paragraphs 5 and 6, which are the vital paragraphs of the will involved in this controversy. Paragraph 5 provides: ''I give and bequeath to my daughters, Lillian M. Tegeler and Alma F. Loy, all money that is left and securities which is to be equally divided between them after expenses are paid.'' The money that was left and the securities which the testator had in mind must have been such money and such securities as would be remaining after the specific bequests to his son George A. Canfield were paid, as mentioned in paragraph 3. It must be presumed that the testator had a full knowledge of his estate and having in mind that in the event the said money that was left and securities would not equal a certain sum of money, it was specifically provided in paragraph 6, ''Providing my money and securities fall short of ten thousand one-third of what it falls short

will be held against the Old Homestead, this amount being my daughters' share, namely Lillian M. Tegeler, and Alma F. Loy." Paragraph 6 could have been made a part of paragraph 5 by simply placing a comma instead of a period after the word "paid" and the intention of the testator would have been made clear beyond doubt. The fact that a paragraph numbered 6 was added does not change the plain intent of what the testator had in mind—that he desired to have his two daughters receive a sum equal to $10,000 if such money and securities were remaining, but in the event that said money and securities did not represent the sum of $10,000, one-third of the deficiency should be charged against the "Old Homestead" estate devised in paragraph 4. In using the words of paragraph 4 "after all directions are carried out," the testator clearly indicated that the devise of the "Old Homestead" plot was subject to certain conditions, which conditions appear in paragraph 6—that it should be subject to one-third of the deficiency that the money which was left and the securities fell short of the sum of $10,000.

That it was the intent of the testator that his daughters Lillian M. Tegeler and Alma F. Loy should receive the sum of $10,000 as their portion of his estate, is shown by the language used in the sixth paragraph, "this amount being my daughters' share, namely Lillian M. Tegeler, and Alma F. Loy," and the testator having in mind the uncertainty of his estate, attempted to equalize the shares by making the share which his son Clarence E. Canfield was to receive subject to one-third of the deficiency in the total amount which the testator desired his daughters to receive.

Taking the will as a whole, we believe that the intention of the testator was, and the construction of the will should be,

1. To devise to Clarence E. Canfield the "Old

Homestead" lot, less the McCollum lot, subject to the conditions set forth in paragraph 6;

2. To bequeath to Lillian M. Tegeler and Alma F. Loy all money and securities left after payment of debts and expenses and prior bequests to George A. Canfield and if the money and securities so left amounted to less than $10,000, one-third of the difference between the money and securities and $10,000 was to be a charge on the real estate devised to Clarence E. Canfield, which amount we find to be $1,900.90, on which amount legatees are entitled to interest from one year after the death of the testator.

The decree is affirmed at the cost of appellant.